59 F.3d 759
 68 Fair Empl.Prac.Cas. (BNA) 552,
66 Empl. Prac. Dec. P 43,626
William James BIALAS; Edward D. Christensen; Rollin M.
Cate, Plaintiffs-Appellants,
v.
GREYHOUND LINES, INC., doing business as Greyhound Bus Lines
Accounting Center, Defendant-Appellee.
 No. 94-1608.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 14, 1995.
Decided July 12, 1995.
 
 Kermit L. Dunahoo, Des Moines, IA, argued (Jacqueline Jorgensen, on the brief), for appellants.
 Amy Hartman, Chicago, IL, argued (J. Stephen Poor, on the brief), for appellee.
 Before BEAM, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MURPHY, Circuit Judge.
 FLOYD R. GIBSON, Senior Circuit Judge.
 
 
 1
 William Bialas, Edward Christensen, and Rollin Cate (collectively "the Plaintiffs") appeal from the district court's[1] entry of summary judgment in favor of their former employer, Greyhound Lines, Inc. ("Greyhound"). The Plaintiffs contend that Greyhound terminated them because of their ages, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634 (1988), and the Iowa Civil Rights Act of 1965, Iowa Code Sec. 216.6 (1995). We affirm.
 
 I. BACKGROUND
 
 2
 Greyhound is a national company that busses passengers and packages. Beginning in 1989, Greyhound attempted to reduce its staff and increase its efficiency. In the aftermath of a nationwide union strike in 1990, Greyhound filed for bankruptcy and intensified its efforts to reorganize the company. The Plaintiffs were employed at Greyhound's Accounting Center in Des Moines, Iowa. In early 1991, Greyhound eliminated the Plaintiffs' positions and terminated them.
 
 
 3
 At the time of his termination, William Bialas was forty-five years old and the manager of the charter revenue department, which audits charter services. Because of the decline in Greyhound's charter services, Bialas' department was consolidated with the statistics department, whose work load had also decreased. Bialas' supervisor, Suzanne Bubel, determined that the manager of the statistics department, Dennis Newton, who was thirty years old, was more qualified to manage the newly-formed department than Bialas. Bubel testified that Newton was already familiar with the work performed by the charter revenue department, while Bialas admitted that he was not familiar with the statistical duties performed by Newton and his staff. Furthermore, Bubel testified that Bialas had been on probation and that he had the lowest performance evaluation of all the managers in her group.
 
 
 4
 At the time of his termination, Edward Christensen was forty-four years old and the senior director of sales accounts payable. Because of the dramatic reduction in staff and resulting decreased need for supervisors, the Accounting Center's senior director, Paul Griffith, decided to eliminate one of the departmental senior director positions. Of the five senior directors, two were older than Christensen; Joe Young was forty-three; and Suzanne Bubel was thirty-nine. Christensen testified that Griffith explained to him that his position was being eliminated and that Joe Young would oversee the consolidated departments because he had better managerial skills than Christensen.
 
 
 5
 At the time of his termination, Rollin Cate was forty-one years old and the manager of the express accounting department, which processes the invoices for package deliveries. Through Greyhound's continued downsizing efforts, the staff in express accounting had been dramatically decreased and numerous positions had been eliminated.[2] Griffith advised Cate that he needed to consolidate more positions and increase his department's efficiency. In November 1990, Cate received a poor evaluation from his immediate supervisor, Joe Young. A few months later, Greyhound eliminated Cate's position and his duties were initially assumed by Joe Young, who was several years older than Cate. Eventually, Joe Young left Greyhound and Cate's former duties were assigned to a younger employee.
 
 
 6
 The Plaintiffs filed a five-count complaint against Greyhound, including claims for age discrimination.[3] The magistrate judge originally ordered that the parties should complete discovery by May 15, 1993, but later extended the discovery deadline until September 13, and then until October 30. On October 29, the Plaintiffs served Greyhound with a second set of interrogatories and second request for production of documents. In response, Greyhound filed a motion to quash the Plaintiffs' discovery requests. The magistrate judge granted Greyhound's motion, concluding that the Plaintiffs had not shown good cause for failing to complete discovery prior to the deadline or failing to request another extension. The district court considered the Plaintiffs' objections, but refused to disturb the magistrate judge's order.
 
 
 7
 In the meantime, Greyhound filed a motion for summary judgment. The district court concluded that the Plaintiffs' terminations occurred during a definite reduction in Greyhound's work force. The court then considered and rejected the Plaintiffs' allegations of discriminatory animus based on comparisons between the Plaintiffs' and their replacements' salaries and qualifications. Finally, the court considered the statements made by Greyhound's upper management.
 
 
 8
 Specifically, Joe Young had told Bialas that he could get two supervisors for the price that Bialas was paid. In a letter to Griffith, Young had mentioned that "[t]wo young men new to the area" had replaced Cate and another employee. The Plaintiffs also complain about statements made by Greyhound's president and CEO, Frank Schmieder. Christensen testified that Schmieder had commented that "[a]nyone at this company over ten years is an idiot." Furthermore, in a memorandum dated January 6, 1992, to a member of Greyhound's Board of Directors, Schmieder had stated:
 
 
 9
 The past two years of revamping Greyhound has revealed a number of organizational or personnel shortcomings. The first problems were structural and were relatively easy to resolve organizationally. The movement from four companies to one and from decentralized to centralized management essentially has been completed. The staffing of the new organization has not gone well. Initially, I tried to fill positions with existing personnel (the reorganization spawned a surplus of vice presidents and regional presidents), knowing full well that people over 45 years of age, including myself, generally have serious difficulty adjusting to change. This is especially true with cultural reorientations. (One manager told me he felt that he was never expected to make a profit in the old company, he was only expected to make his budget.) Most of our managers were bus company generalists. They were focused on getting the bus down the road. This shift to a customer focused services company has produced numerous casualties.
 
 
 10
 The district court determined that these comments did not establish that age played a role in the Plaintiffs' terminations. The court concluded that the Plaintiffs had failed to establish a prima facie case of age discrimination and granted summary judgment in favor of Greyhound. The Plaintiffs appeal.
 
 II. DISCUSSION
 
 11
 Summary judgment is appropriate if, viewing the evidence in a light most favorable to the non-moving party, there is no genuine issue of material fact. Weber v. American Express Co., 994 F.2d 513, 515 (8th Cir.1993). When a properly supported motion for summary judgment is made, the adverse party must come forward with specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). "Although summary judgment should seldom be granted in employment discrimination cases, if the plaintiff fails to establish a factual dispute on each element of the prima facie case, summary judgment is appropriate." Weber, 994 F.2d at 515-16 (citations omitted).
 
 A. Failure to Establish a Prima Facie Case
 
 12
 The ADEA provides that it is unlawful for an employer to discharge any person in the protected class (age forty and older) "because of such individual's age." 29 U.S.C. Sec. 623(a)(1) (1988). Likewise, the Iowa Civil Rights Act prohibits an employer from discriminating against or discharging an employee because of his age. Iowa Code Sec. 216.6 (1995).
 
 
 13
 In order to state a prima facie case of age discrimination under the ADEA and the Iowa Civil Rights Act, a plaintiff must establish that: (1) he was within the protected age group; (2) he met applicable job qualifications; (3) he was discharged; and (4) after his termination, the position remained open or the employer hired a person not in the protected class to fill this opening. See Bashara v. Black Hills Corp., 26 F.3d 820, 823 (8th Cir.1994); Wing v. Iowa Lutheran Hosp., 426 N.W.2d 175, 177 (Iowa Ct.App.1988). During a reduction in an employer's work force, however, the fact that the plaintiff's duties were assumed by a younger person is not in itself enough to establish a prima facie case. Johnson v. Minnesota Historical Soc'y, 931 F.2d 1239, 1243 (8th Cir.1991). "[O]therwise every plaintiff in a protected age group would be allowed a trial simply because he was discharged during a reduction in force." Id. Therefore, in a reduction-in force case, the plaintiff is required to come forward with additional evidence that age was a factor in his termination. Id.; Bashara, 26 F.3d at 823; Wing, 426 N.W.2d at 178.
 
 
 14
 First, although the Plaintiffs concede that Greyhound was involved in extensive reorganization, they argue that this is not a bona fide reduction-in-force case because Greyhound was not eliminating middle-management personnel. The Plaintiffs' argument is belied by their own testimony. Christensen, a senior director, acknowledged that by the end of 1989, he had eliminated 50 to 60 positions that had previously reported to him, including many supervisors. Furthermore, it is undisputed that two of the three Plaintiffs, Bialas and Christensen, had their departments consolidated with other departments. Cate's position was eliminated, and he admitted that his duties were assumed by Joe Young, his immediate supervisor. We conclude that there is overwhelming evidence in the record to support the district court's decision that the Plaintiffs were terminated during a definite reduction in force.
 
 
 15
 Second, the Plaintiffs argue that they have established circumstantial evidence of age discrimination because they were older, higher-paid employees who were eventually replaced by younger, lower-paid employees. Accepting the Plaintiffs' allegations that they were terminated because their salaries were greater than their replacements' salaries, this does not necessarily support an inference of age discrimination. In Hazen Paper Co. v. Biggins, --- U.S. ----, ---- - ----, 113 S.Ct. 1701, 1706-07, 123 L.Ed.2d 338 (1993), the Supreme Court explained:
 
 
 16
 When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age.... Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age-based."
 
 
 17
 Id. at ---- - ----, 113 S.Ct. at 1706-07. We conclude that even if Greyhound terminated the Plaintiffs because of their status as higher-paid employees, this evidence does not in itself support an inference of age discrimination. See Serben v. Inter-City Mfg. Co., 36 F.3d 765, 766 (8th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1402, 131 L.Ed.2d 290 (1995).
 
 
 18
 Third, the Plaintiffs argue that the statements made by Greyhound's management constitute evidence of age discrimination. For the reasons discussed above, we believe that Joe Young's comment about salary and Frank Schmieder's statement that it was unwise to remain at Greyhound more than ten years do not establish that age played a role in the Plaintiffs' terminations.
 
 
 19
 The record is clear that Joe Young, who was forty-three years old, assumed Cate's duties. The fact that Young described Cate's eventual replacement as "a young man" does not lead to an inference that Cate was discharged because of his age. Furthermore, it is undisputed that Suzanne Bubel made the decision to terminate Bialas and that Paul Griffith made the decisions to terminate Christensen and Cate. See Frieze v. Boatmen's Bank of Belton, 950 F.2d 538, 541 (8th Cir.1991) (finding no inference of age discrimination where the challenged statements were made by persons not involved in the termination decision).
 
 
 20
 We are more troubled by Schmieder's memorandum in which he noted that "people over 45 years of age, including myself, generally have serious difficulty adjusting to change." In the context of the entire paragraph, however, it is apparent that Schmieder's concern was that the some of the current managers, regardless of their ages, had resisted the company's attempts to reorganize to a more profit-driven and competitive, customer-oriented business. Moreover, this memorandum was dated more than six months after the last Plaintiff was terminated and, as we have noted, was written by someone who did not take part in the termination decisions. See Beshears v. Asbill, 930 F.2d 1348, 1354 (8th Cir.1991) (statement that older employees have problems adapting to changes was made by person who actively participated in the personnel decisions at issue). In sum, we conclude that the Plaintiffs have failed to come forward with additional evidence that age factored into Greyhound's decision to terminate them.
 
 B. Denial of Further Discovery
 
 21
 The district court to whom the case is assigned shall consider a party's objections to a magistrate judge's order and "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law." Fed.R.Civ.P. 72(a). "We review the district court's exercise of its broad discretion with respect to discovery motions for gross abuse of discretion resulting in fundamental unfairness...." Lee v. Armontrout, 991 F.2d 487, 489 (8th Cir.) (quotations omitted), cert. denied, --- U.S. ----, 114 S.Ct. 209, 126 L.Ed.2d 166 (1993).
 
 
 22
 Contrary to the Plaintiffs' argument, the magistrate judge did not merely engage in wooden adherence to strict procedural deadlines. The magistrate judge had already granted two discovery extensions. Rather than filing a motion for an additional extension, the Plaintiffs ignored the magistrate judge's deadline and served their second set of interrogatories and second request for production of documents the day before discovery was to have been completed. We conclude that the district court did not abuse its discretion by enforcing the magistrate judge's scheduling deadline. See Geiserman v. MacDonald, 893 F.2d 787, 792 (5th Cir.1990) ("Adherence to reasonable deadlines is critical to restoring integrity in court proceedings. We will not lightly disturb a court's enforcement of those deadlines....").
 
 III. CONCLUSION
 
 23
 We affirm the district court's order granting summary judgment in favor of Greyhound.
 
 
 
 [1]
 The Honorable Ronald E. Longstaff, United States District Court Judge for the Southern District of Iowa
 
 
 [2]
 Cate testified that prior to the strike, his department had approximately ninety-five employees. After the strike, express accounting had been reduced to approximately fifty-five employees
 
 
 [3]
 The Plaintiffs do not appeal the district court's entry of summary judgment on their claims for sex discrimination, disability discrimination, breach of implied contract, and breach of the covenant of good faith and fair dealing