Jerold W. **BLANSCET**, James L. Jones and Walter F. Nolen, Plaintiffs,

v.

**JENKINS ENGINEERING, INC., Defendant.**

No. 97–2255.

United States District Court, W.D. Arkansas, Fort Smith Division.

July 10, 1998.

Daniel Shue, Sexton & Fields, P.L.C., Fort Smith, AR, for Plaintiffs.

G. Alan Wooten, Warner, Smith & Harris, P.L.C., Fort Smith, AR, for Defendant.

### MEMORANDUM OPINION

DAWSON, District Judge.

This case is before the court on a motion for summary judgment filed by the defendant, Jenkins Engineering, Inc. The plaintiffs, Jerold W. Blanscet, James L. Jones and Walter F. Nolen, filed this action on November 4, 1997 under the provisions of the Age Discrimination in Employment Act (ADEA herein) 29 U.S.C. § 621, et seq. contending that they suffered adverse employment action under circumstances giving rise to an inference of unlawful discrimination because of their age.

### Background.

Defendant Jenkins Engineering, Inc. (the "company") is an Arkansas corporation with its principal place of business in Fort Smith, Arkansas. The company employs twenty or more employees and is engaged in the business of providing engineering services to customers in the petroleum industry. Charles M. ("Mac") Jenkins is the president of the company, and his son Charles W. ("Bill") Jenkins serves as the Secretary/Treasurer and Vice–President of Operations. The company, originally called Wohlford and Jenkins Gas Consultants, Inc., has been in existence since before March, 1969.

Plaintiff Jerold W. Blanscet ("Blanscet") was born on March 13, 1940, and began working for the defendant Jenkins Engineering on September 7, 1978. During his employment with defendant, which lasted nearly 19 years, Blanscet progressed from his original position as a Field Pumper to Field Supervisor and finally to Area Supervisor.

Plaintiff James L. Jones ("Jones") was born on January 21, 1937, and began his employment with the company on July 18, 1977. Like Blanscet, Jones started out as a Field Pumper and worked his way up to Area Supervisor.

Plaintiff Walter F. Nolen ("Nolen") was born on December 19, 1947 and started his career with defendant on or about March 27, 1969 in the position of Field Tester. Over

the twenty-eight year period of his employment with defendant, he progressed to the position of Testing Supervisor.

According to a two page memo drafted by Mac Jenkins and dated August 2, 1996[1], a meeting was held that day in the company offices. In attendance at this meeting were Mac Jenkins, Bill Jenkins, Blanscet, Jones, Nolen, and Neal Prentice, Jr., Pumping Department Supervisor. The memo states that the meeting was called by Mac Jenkins to discuss the problems being encountered during ongoing "attempts to change the direction of [the] company."

In the memo, Mac Jenkins claims that personnel at the lower levels of the company were working hard to change the company image and the direction of the company. Jenkins then writes:

"Conversely, it appears the Area Supervisors and the Department Heads are not as actively helping the field personnel and contacting potential clients. These supervisors apparently have not been willing to assume the leadership role they need to if we are going to make the necessary changes to survive.

"... It is very apparent to me that our mid and high level supervisors are not willing to expend the effort to make this change. If these supervisors that are present at this meeting believe that 'just wait and this new phase will pass', then they are wrong. This is not the 'same old, same old' way of times past.

"If there are any doubts of the firm being carried forward by Bill, when I am no longer with the firm, they should be abandoned. As long as Jenkins Engineering is a profitable corporation, then Bill will continue to operate. If it is not, then Bill will quickly respond to the problem and correct it, regardless what changes may be needed. As these supervisors should be acutely aware, Bill is assuming the stewardship of all of the companies.

"What I impressed on these supervisors is they have the most years of service, the most responsible positions, the highest salaries, AND THE MOST TO LOSE IF THE COMPANY DOES NOT GO FORWARD (emphasis in original)... I pointed out, the three Pumping Department Supervisors in this room, which represented three of the seventeen total Pumping Department personnel, received approximately 50% of that department's salaries. The Testing Department Supervisor receives double the compensation than that of the one Technician working under him... FINALLY, AND MOST EMPHATICALLY, I WARNED THESE DEPARTMENT HEADS AND FIELD SUPERVISORS THAT CHANGES WOULD BE MADE IF THEIR EFFORTS WERE NOT INCREASED. THE CHANGE OF DIRECTION FOR OUR COMPANY THAT WE HAVE STARTED WILL BE CARRIED FORWARD. I STATED THAT I HOPED THESE INDIVIDUALS WOULD HELP TAKE THE COMPANY FORWARD (emphasis in original)."

A copy of this memo was placed in the personnel file for each plaintiff. Plaintiffs claim that they had no knowledge of the existence of the memo until this lawsuit was initiated.

According to the company, poor economic conditions and a dwindling customer base led to negative company earnings. The company alleges that for the fiscal year ending September 30, 1995, it posted taxable income of negative eleven thousand, two hundred twelve dollars (-$11,212.00). As of September 30, 1996, it is alleged that the negative income had increased to one hundred forty thousand, seven hundred fourteen dollars (-$140,714). It would appear that the August 2, 1996 meeting had some effect on efforts to improve profits during the fiscal year that commenced on October 1, 1996, because as of September 30, 1997 the negative income had decreased a marginal amount to one hundred thirty seven thousand, seven hundred forty one dollars (-$137,741).

The company contends that it undertook a bona fide "reduction in force" with the legiti-

---

1. The memo is attached as Exhibit "2" to the affidavit of each plaintiff filed in response to the motion for summary judgment. The memo purports to put on paper the purpose of the meeting as well as the specific items of business discussed by those in attendance. The plaintiffs apparently do not claim that they were not present at the meeting, nor do they contend that the memo is not an accurate account of the meeting.

mate business objective of cutting costs and making the business more profitable. Defendant contends that the criteria used to determine which jobs would be eliminated was not age based. Rather, defendant made the decision to eliminate the entire intermediate level of management. Blanscet, Jones and Nolen were selected for termination because they represented middle management.[2]

Blanscet was terminated from his position as Area Supervisor in the Pumping Department on March 18, 1997. Blanscet was 57 years old and had been with the company nearly 19 years.

Jones was also terminated from his position as Area Supervisor in the Pumping Department on March 18, 1997. At that time, Jones was sixty years old and had been with the company for twenty years.

A few days later on March 23, 1997 Walter F. Nolen was terminated from his position of Testing Supervisor after having worked for the company for about 28 years. Nolen was forty-nine years old.

According to each plaintiff, at the time he was informed of his termination, he offered to remain with the company at a reduced rate of pay. Each avers that in a prior year he had taken a pay cut in order to help the company survive a downturn in business. These offers were rejected by the company.

The responsibilities associated with the plaintiffs' former positions were reassigned to other employees who are younger than plaintiffs. Additionally, Mac Jenkins, who is older than the plaintiffs, has taken over some of the duties that were associated with the plaintiffs' former jobs, and he has continued to work without pay.

The company alleges that no new employees have been hired to replace the plaintiffs. The company admits that on November 29, 1996 an offer of employment was extended to a new recruit, but that offer was turned down, and furthermore, the position offered had nothing to do with the positions held by the plaintiffs.

Upon termination, each plaintiff was provided a letter of recommendation from the company.[3] The letter given to Blanscet is dated March 19, 1997 and contains the statement, "Jerold is a dedicated individual, very pleasant to work with and demonstrated excellent mechanical skills in our Pumping Department." The letter of recommendation for James L. Jones, dated May 19, 1997, contains the same statement, except that the name is changed. The letter given to Walter Nolen is dated May 5, 1997 and states that, "Walt is a competent individual with many years of experience in the oil and gas industry... I would recommend Walt to any employer as an employee who is capable of contributing to their organization."

### Discussion.

The court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only when its resolution affects the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. Id. at 252, 106 S.Ct. at 2512. The court views the evidence in favor of the nonmoving party, giving that party the benefit of all justifiable inferences that can be drawn in its favor. If reasonable minds could differ as to the import of the evidence, judgment should not be granted. Id. at 250–51, 106 S.Ct. at 2511–12. However, the nonmoving party must set forth specific facts, by affidavit or otherwise, sufficient to raise a genuine issue of material fact for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The Court is mindful that the Eight Circuit has made it clear that summary judgment should rarely be granted in the context

---

**2.** Information concerning the age and employment status of Neal J. Prentice, Jr., the fourth supervisor present at the August 2, 1996 meeting, has not been provided to the court.

**3.** The letter of recommendation for each plaintiff is attached as Exhibit "1" to the affidavit of each plaintiff filed in response to the motion for summary judgment.

of employment actions because they are essentially fact based. Summary judgment is appropriate only if all the evidence points one way and is susceptible to no reasonable inferences that support the position of the nonmoving party. *See Hindman v. Transkrit Corporation*, 145 F.3d 986, 987 (8th Cir. 1998).

The ADEA prohibits an employer from discharging "any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Any individual who is at least forty years old is included in the protected class. 29 U.S.C. § 631. It is not unlawful to base an employment decision on "reasonable factors other than age." 29 U.S.C. § 623(f)(1).

■ To establish a claim under the ADEA, the plaintiffs must show that they were intentionally discriminated against by the defendant based on their age. They can make this showing with either direct or circumstantial evidence that could lead a reasonable person to conclude that the adverse employment actions were motivated by the prohibited factor.

■ If direct evidence of discriminatory intent is not available, the Court must use the "burden shifting" analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).[4] This framework enables a claimant to create an inference of discrimination. The plaintiff may establish a prima facie case of age discrimination by showing that: (1) he was within the protected age group; (2) he met the applicable job qualifications; (3) he was discharged; and (4) after his termination, the position remained open or the employer hired a person not in the protected class to fill this opening. If the plaintiff is able to establish, by a preponderance of the evidence, the prima facie case, the burden of production then shifts to the defendant to articulate a legitimate non-discriminatory reason for the employee's termination. The plaintiff may then rest on his prima facie

case or he may attempt to show that the legitimate reason for the action proffered by the defendant is a pretext for the illegal discrimination. Ultimately, the burden is on the plaintiff to prove by a preponderance of the evidence that age was a determining factor in the discharge. *See Johnson v. Runyon*, 137 F.3d 1081, 1082 (8th Cir.1998); *Bialas v. Greyhound Lines, Inc.* 59 F.3d 759, 762 (8th Cir.1995); *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994).

■ Courts have acknowledged that a "reduction in force" (RIF) is a legitimate reason for termination. Therefore, if the adverse employment action was taken in the context of a RIF, the plaintiffs must produce some additional evidence that age was a motivating factor in the termination. The additional evidence is also necessary because the plaintiffs cannot meet the fourth factor stated above, as the position has been either eliminated or combined with another position. *See Bashara*, 26 F.3d at 823; *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1165 (8th Cir.1985).

**A. Direct Evidence of Age Discrimination.**

■ Plaintiffs contend that they have provided direct evidence that age was the motivating factor behind the decision to target them for termination. They point to the contents of the August 2, 1996 memo, and specifically the portions that mention the new stewardship of Bill Jenkins, the "same old same old way of doing things," and the salaries paid to the plaintiffs. Plaintiffs also contend that the memo makes no reference to an economic decline in company business. In response, the company asserts that the memo, when read as a whole, supports the position that Jenkins Engineering was trying to change its image and do business in a different way in order to make the company more profitable.

The court reads the memo as a whole and does not find that the content to be a "smoking gun" as claimed by plaintiffs. It does not

---

4. The *McDonnell Douglas* case involved an action under Title VII of the Civil Rights Act of 1964. However, the Eighth Circuit has held that the analysis used in that case is applicable to

claims under the ADEA as well. *See Hardin v. Hussmann Corp.*, 45 F.3d 262, 264 (8th Cir.1995) (citations omitted).

contain statements that plaintiffs are disfavored or will be terminated because they are over the age of forty. It does contain references to a new way of doing business and a change of direction for the company. It states that plaintiffs were warned that their efforts to help take the company forward must increase or changes would be made. The Court finds that the memo does not constitute direct evidence of a discriminatory animus.

## B. The Burden Shifting Analysis.

Plaintiffs are entitled to create an inference of age discrimination by presenting a prima facie case. There is no dispute that plaintiffs meet the first three requirements: (1) each is within the protected age group; (2) each met applicable job qualifications; and (3) that despite these qualifications, each was discharged. The question is, what more must plaintiffs show to make their prima facie case?

Jenkins, citing *Bashara, supra,* and *Holley, supra,* contends that because plaintiffs were terminated pursuant to a bona fide RIF, plaintiffs must come forward with additional evidence of discrimination. Jenkins claims that a business decision was made to eliminate an entire level of management that was no longer needed so that costs could be reduced.

In response, plaintiffs concede that, absent a finding of direct evidence of discrimination, it is proper to analyze the case using the burden shifting framework for reduction in force cases. Plaintiffs direct the court's attention to several items of additional evidence that support their position that they were discriminated against because of age. First, plaintiffs submit statistical evidence showing that only three people were terminated pursuant to the reduction in force and each was within the protected age group. Second, defendant has submitted no objective criteria by which it was determined which jobs would be eliminated. Third, Mac Jenkins was trying to hire a new employee for a new position at a time when declining business was allegedly causing the need to eliminate positions. Fourth, the work previously assigned to plaintiffs has been reassigned to younger workers and Mac Jenkins, who is no longer a salaried employee. Finally, the

plaintiffs' offers to remain with the company at a reduced pay were summarily rejected. Plaintiffs contend that when all of the circumstantial evidence is considered together, they have established an inference of age discrimination and at the same time provided evidence that the RIF was merely a pretext for the illegal discrimination.

Defendant attempts to downplay the impact of the cumulative circumstantial evidence. With respect to the fact that only persons in the protected age group were targeted for termination, the company claims that it made sense to eliminate the higher paid employees so that more lower wage employees could be retained to continue the business. Defendant contends that the fact that plaintiffs' former duties were absorbed by the remaining employees who happened to be younger does not support an inference of discrimination.

Defendant also asserts that in determining which employees should be let go, it objectively decided that the entire level of middle management was not necessary to the continuation of the business. As the plaintiffs constituted the entire level of middle management, they were the ones who were terminated. The defense also points out that the purpose of the August 2, 1996 meeting was to encourage middle level managers to help make the company more profitable. As they had failed to do so, they were terminated.

In *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759 (8th Cir.1995) the Eighth Circuit concluded that during a RIF the fact that a plaintiff's duties were assumed by a younger person is not in itself enough to establish a prima facie case. *Id.* at 763. The court also held that evidence showing that the plaintiffs were terminated because of their status as higher paid employees "does not *in itself* support an inference of age discrimination (emphasis added)." *Id.* at 763 (citing *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609–10, 113 S.Ct. 1701, 1706–07, 123 L.Ed.2d 338 (1993))(discharge motivated by factor correlated to age, like seniority, is not age based discrimination). In *Bialas,* the court found that the record contained "overwhelming" evidence that plaintiffs were terminated during

a definite reduction in force. Also, the employer provided substantial evidence of the objective criteria used to determine which employees would be selected for termination. First it was determined how many positions would be eliminated and then each employee was evaluated for placement in the remaining positions.

In the other case cited by defendant, *Serben v. Inter–City Mfg. Co., Inc.*, 36 F.3d 765 (8th Cir.1994)(per curiam), *cert. denied*, 514 U.S. 1037, 115 S.Ct. 1402, 131 L.Ed.2d 290 (1995), the evidence showed that the plaintiff's position was eliminated as part of a reduction in force, and he was the same age when he was terminated as he was when he was hired. Plaintiff's offer to work in a different lower paid position was refused by the employer because no such position was available. The Court ruled that plaintiff's membership in the protected class, his status as an experienced and higher paid employee, and the employer's refusal to accept his offer to work in a lower paid position was insufficient evidence to support a jury verdict in his favor. *Id.* at 766.

The present case differs from those cited by the defendant because the plaintiffs are essentially attacking the genuineness of the defendant's claim that plaintiffs were objectively selected for termination pursuant to a bona fide reduction in force. In the case *Hillebrand v. M–Tron Industries, Inc.*, 827 F.2d 363 (8th Cir.1987), the Eighth Circuit reversed a grant of summary judgment in favor of the employer after finding that the employee had established a prima facie case of age discrimination by showing that the proffered reason for his discharge, a reduction in force, was pretextual. The plaintiff in that case did not argue that the employer made a bad business decision or used the wrong criteria in terminating him. Instead he argued that the reduction in force rationale was merely a pretext used to cover the age discrimination. *Id.* at 367. The Court held that where the record supports a claim that there was no genuine reduction in force, the "more exacting standards" set forth in

the *Holley* case are not triggered. *Id.* at 368. The Court also ruled that the *McDonnell Douglas* analysis is not exclusive and its application will vary from case to case. "The significance of the prima facie showing is the inference it creates that the plaintiff was discharged for a discriminatory reason." *Hillebrand v. M–Tron Industries, Inc.*, 827 F.2d at 368.

In the case *Hardin v. Hussmann*, 45 F.3d 262 (8th Cir.1995) the Court held that, while a company does not need to provide objective criteria for the purpose of establishing that the RIF was legitimate, the company's method of selecting particular employees for discharge is subject to review for evidence of discriminatory animus. *Id.* at 266.

■ The Court finds that plaintiffs have created a genuine issue of material fact as to whether the stated reasons for choosing plaintiffs for termination are merely pretext for illegal discrimination. The Court bases its ruling on the evidence provided by the plaintiffs in response to the motion for summary judgment as well as the inconsistencies found in the defendant's proffered reasons for selecting these particular plaintiffs for termination. According to the memo, there were four middle level managers present at the August 2, 1996 meeting, yet it appears only three were terminated.[5] This conflicts with the proffered rationale that an entire level of management was eliminated. The defendant also alludes to the alleged failure of the plaintiffs to assist with changing the image and direction of the company as a possible reason for the their termination. Yet, the company sent the plaintiffs on their way with letters recommending them for positions with other companies. These facts along with the statistical evidence; the lack of clear and objective criteria for determining the particular positions to be eliminated; the attempt to hire a new employee at a time when declining business was allegedly causing the need for downsizing; the reassignment of work to younger employees; and the

---

5. The fourth manager at the meeting was Neal J. Prentice, Jr. The letters of recommendation given to two of the plaintiffs contain the signature of Neal J. Prentice. The court also notes that on the memo dated August 2, 1996, Neal J. Prentice,

Jr. is identified as Pumping Department Supervisor, while on the letters of recommendation the title "Pumping Superintendent" appears under the name Neal J. Prentice.

rejection of the plaintiffs offers to remain at reduced pay when such arrangements had worked in the past, combine to meet the "additional showing" requirement set out in the *Holley* case.

The record as a whole contains sufficient evidence to support a prima facie inference of illegal discrimination. It will be up to the fact finder to weigh the credibility of the witnesses and evidence in deciding whether the plaintiffs' proof supports a verdict in their favor.

***Conclusion.***

Based on the foregoing, IT IS HEREBY ORDERED that defendant's motion for summary judgment is denied.

IT IS SO ORDERED.