Kathy L. LOECKLE, Plaintiff,

v.

STATE FARM AUTOMOBILE INSURANCE COMPANY and State Farm Fire & Casualty Company, Defendants.

No. C98–3025–MWB.

United States District Court, N.D. Iowa, Central Division.

July 28, 1999.

Jean M. Baker, West Des Moines, IA, Michael J. Carroll of Coppola, Sandre, McConville & Carroll, P.C., West Des Moines, IA, for Plaintiff.

Mark W. Thomas, Marcy O'Brien of Grefe & Sidney, P.L.C., Des Moines, IA, for Defendants.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I.   *INTRODUCTION* .................................................... 841
II.  *STANDARDS FOR SUMMARY JUDGMENT* ................................ 842
III. *FACTUAL BACKGROUND* ............................................. 844
    A.  *Uncontested Facts* ......................................... 844
    B.  *Contested Facts* .......................................... 846
IV. *LEGAL ANALYSIS* .................................................. 846
    A.  *Employment Relationship Requirement* ...................... 846
    B.  *Determination of Employee Status* ......................... 846
    C.  *Application Of The Hybrid Test* ........................... 848
       1.  *State Farm Auto's right to control and supervise Loeckle* .... 849
       2.  *Other hybrid test factors* ........................... 849
    D.  *Loeckle's Disability Claims Against State Farm Fire* ...... 850
       1.  *"Regarded as having" a disability* .................. 851

2. *Substantial limitations on major life activities* ...................... 852
3. *Analysis of Loeckle's ADA Claim* .................................... 854
E. *Loeckle's ADEA Claim* ............................................. 858
1. *The analytical framework for claims of age discrimination* ............ 858
2. *Analysis of prima facie case* ...................................... 860
V. CONCLUSION ...................................................... 861

One of several issues raised by defendants' respective motions for summary judgment in this employment discrimination lawsuit is the relatively novel question of whether plaintiff was able to serve two masters—both defendant State Farm Automobile Insurance Company and State Farm Fire And Casualty Company—and thus be able to assert that both defendants were her "employer" for the purposes of the three civil rights statutes at issue in this litigation.

## I. INTRODUCTION

Plaintiff Kathy L. Loeckle filed this employment discrimination lawsuit against defendants State Farm Automobile Insurance Company ("State Farm Auto") and State Farm Fire And Casualty Company ("State Farm Fire"), on March 26, 1998. In her complaint, Loeckle claims that both State Farm Auto and State Farm Fire were her employers and asserts federal claims for violations of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.,* and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* as well as a pendant state law claim for violation of Iowa Code Ch. 216, the Iowa Civil Rights Act ("ICRA").

In Count I, Loeckle alleges that she was discriminated against based on a perceived disability, in violation of the ADA. In Count II, Loeckle asserts that defendants discriminated against her based on her age, in violation of the ADEA. Finally, in Count III, Loeckle alleges a pendant state law claim that she was discriminated against on the basis of a perceived disability, in violation of the ICRA. The defendants answered the complaint, generally denying Loeckle's allegations and raising a variety of affirmative defenses.

On April 1, 1999, State Farm Auto and State Farm Fire filed their respective motions for summary judgment. In its motion, State Farm Auto asserts that there are no genuine issues of material fact and argues that it was not Loeckle's employer. As a result, State Farm Auto contends that Loeckle cannot establish a *prima facie* case of discrimination under the ADA, the ADEA, or the ICRA. Alternatively, State Farm Auto argues that Loeckle failed to exhaust her administrative remedies as to her discrimination claims because it was never named as a respondent in her administrative claim before the Iowa Civil Rights Commission and the Equal Employment Opportunity Commission ("EEOC").

In its motion for summary judgment, State Farm Fire contends that Loeckle cannot establish a *prima facie* case of disability discrimination because Loeckle was not perceived as having a disability which substantially limited a major life activity. State Farm Fire also asserts that Loeckle is unable to demonstrate that she suffered an adverse employment action because of her perceived disability. Alternatively, State Farm Fire contends that even if Loeckle is able to make out a *prima facie* case of disability discrimination, she is unable to show that its articulated reason for its action was a pretext for discrimination. State Farm Fire advances identical arguments against Loeckle's pendant state law claim that she was discriminated against on the basis of a perceived disability. Finally, State Farm Fire asserts that Loeckle is unable to establish a *prima facie* case of age discrimination. Alternatively, State Farm Fire contends that even if Loeckle is able to establish a *prima facie* case of age discrimination, she is unable to demonstrate that State Farm Fire's articulated

reason for its actions was a pretext for discrimination based on age. State Farm Auto filed a joinder to State Farm Fire's Motion For Summary Judgment. Loeckle filed a timely resistance to defendants' respective motions and asserts that genuine issues of material fact preclude summary judgment on her claims against both defendants.

The court heard telephonic oral arguments on defendants' respective motions for summary judgment on July 21, 1999. At the oral arguments, plaintiff Loeckle was represented by counsel Jean M. Baker, West Des Moines, Iowa, and Michael J. Carroll of Coppola, Sandre, McConville & Carroll, P.C., West Des Moines, Iowa. Defendants were represented by counsel Mark W. Thomas and Marcy O'Brien of Grefe & Sidney, P.L.C., Des Moines, Iowa. The parties have filed thorough briefs in support of their respective positions. Counsel were exceptionally well prepared for oral argument. The oral arguments were also spirited and very informative.

The court turns first to the standards applicable to motions for summary judgment, then to a discussion of the undisputed facts as shown by the record and the parties' submissions, and finally to the legal analysis of whether defendants are entitled to summary judgment on Loeckle's discrimination claims.

## II. STANDARDS FOR SUMMARY JUDGMENT

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to FED. R.CIV.P. 56 in a number of decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997); *Security State Bank v.*

*Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). Thus, the court will not consider those standards in detail here. Suffice it to say that Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim or to obtain a declaratory judgment may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

FED.R.CIV.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to

whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y,* 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.,* 827 F.2d 363, 364 (8th Cir.1987), *cert. denied,* 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.,* 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.,* 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.,* 109 F.3d 1261, 1264 (8th Cir. 1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.,* 45 F.3d 262 (8th Cir. 1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.,* 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand,* 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson,* 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch,* 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson,* 931 F.2d at 1244); *Crawford,* 37 F.3d at 1341 (quoting *Johnson,* 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford,* 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow,* 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford,* 37 F.3d at 1341); *Webb v. Garelick Mfg. Co.,* 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford,* 37 F.3d at 1341); *Wooten v. Farmland Foods,* 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford,* 37 F.3d at 1341); *Johnson,* 931 F.2d at 1244.

However, the Eighth Circuit Court of Appeals has also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.,* 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.,* 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134 (8th Cir. 1999) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate). Furthermore, "[s]ummary judgment is proper when a plaintiff fails to establish a factual dispute on an essential element of her [or his] claim." *Snow,* 128 F.3d at 1205; *accord Helfter,* 115 F.3d at 615; *Bialas v. Greyhound Lines, Inc.,* 59 F.3d 759, 762 (8th Cir.1995). The court will therefore keep these special cautions in mind while considering defendants' respective motions for summary judgment.

### III. FACTUAL BACKGROUND

#### A. Uncontested Facts

The record reveals that the following facts are undisputed. State Farm Insurance Companies is an informal designation for a number of affiliated insurance companies. Two of these affiliated companies are State Farm Mutual Automobile Insurance Company and State Farm Fire & Casualty. State Farm Fire is a wholly owned insurance subsidiary of State Farm Auto. Both State Farm Fire and State Farm Auto are headquartered in Bloomington, Illinois. Although the two companies share a common human resources department, each company makes its own hiring and employment termination decisions.

In 1981, plaintiff Kathy L. Loeckle was hired by Mick Brown of State Farm Fire. Loeckle was assigned to State Farm Fire. From 1981 through 1997, Loeckle worked as a secretary for State Farm Fire in its Mason City, Iowa, office. She eventually worked her way up to the highest secretarial classification—senior claims service assistant. During this time Loeckle was paid by State Farm Fire and her performance reviews were done by Mike Bringolf and J.P. Buzynski. Both Bringolf and Buzynski are Claims Superintendents with State Farm Fire. In 1988, Mark Cottrell became State Farm Fire's Divisional Claims Superintendent of Iowa. In this position he was responsible for supervising, *inter alia*, Loeckle.

State Farm Auto and State Farm Fire shared office space in Mason City. At the time Loeckle was hired by State Farm Fire there was no State Farm Auto secretary in Mason City. State Farm Auto and State Farm Fire had a share agreement under which both companies could utilize the services of Loeckle. In Loeckle's performance reviews, notations were made regarding her work for both State Farm Fire and State Farm Auto.

Loeckle performed the following duties for both State Farm Fire and State Farm Auto: transcribed written statements; prepared memorandums; prepared status reports; prepared liability reports; prepared correspondence; prepared inventory cards; prepared bills; prepared requisition documents for office supplies; prepared absentee reports; prepared the "Bodily Injury Index"; prepared the "Property Insurance Loss Report" for State Farm Fire; prepared "theft letters" for State Farm Fire; prepared and maintained index bureau cards regarding vehicle theft, fire and loss for State Farm Auto; prepared salvage reports for State Farm Auto; photographed vehicles; prepared subrogation receipts; and obtained money orders for subrogation. During her employment with State Farm Fire, Loeckle performed work for both State Farm Fire and State Farm Auto superintendents, managers, and adjusters.

In 1991, Loeckle requested that additional help be hired to assist with the secretarial duties in the Mason City Office. Although it was determined at that time that no additional secretarial help was required for the office, a temporary part-time employee was later hired to assist with the secretarial duties. Cottrell subsequently informed Loeckle that State Farm Auto had authorized the hiring of a new secretary for the Mason City office. Loeckle, Kevin Hall, a State Farm Auto Claim Representative, Kevin Boehmer, a State Farm Auto Senior Claims Representative, interviewed approximately five individuals for the new secretary position, including Doris Bacon. Loeckle administered typing and "JEPS" tests to the secretarial applicants.[1] Justin Wright, a superintendent with State Farm Auto, asked Loeckle for her opinion as to who should be hired for new secretarial position.

---

1. The JEPS test is a battery of tests which examine an applicant's spelling, grammar and mathematical abilities.

Loeckle recommended that Doris Bacon be hired. Wright agreed with Loeckle's suggestion and Bacon was hired in December 1991. Although Bacon was assigned to State Farm Auto and Loeckle was assigned to State Farm Fire, Loeckle was responsible for training Bacon. Despite their corporate designations, both Loeckle and Bacon performed clerical work for State Farm Auto and State Farm Fire.

In 1995, State Farm Fire underwent a nationwide reorganization of its claims processing offices. This reorganization effected all of State Farm Fire's Iowa claims offices, including its Mason City office. The reorganization entailed, *inter alia*, a move to have more centralized claims processing conducted in regional offices. Under the reorganization, a main group of claims representatives would serve State Farm Fire's west central region through an office located in Lincoln, Nebraska. Initial handling of all fire claims would be conducted telephonically through the regional office. Approximately one-third of the west central region's fire claims would then be managed by field offices, such as the Mason City office. Additionally, as part of the reorganization, a large amount of secretarial work was to be transferred from field offices to the regional office. As result, after the reorganization, State Farm Fire would have centralized telephonic dictation through its regional office.

In January 1996, Buzynski scheduled a meeting with Loeckle. At the meeting, Buzynski told Loeckle that she had been blamed by Darren Waddell with losing a draft. Buzynski also questioned Loeckle's memory and mental alertness. He asked Loeckle if she wished to see the company nurse or to take medical leave. Loeckle declined these offers and informed Buzynski that the only medical problems she was experiencing was thyroid problems and menopause, and that her personal physician was adequately attending to her medical needs. In the spring of 1996, Buzynski asked Loeckle's daughter, Kimberley Loeckle, who was a State Farm employee, about her mother's health. Specifically, Buzynski inquired about a spot on Loeckle's lung and menopause.

Cottrell was responsible for implementing the reorganization in Iowa in late 1995 and early 1996. At some point, Cottrell told Loeckle that her position with State Farm Fire was safe. Under the reorganization in Iowa, State Farm Fire's Spencer, Iowa, office was closed and its Mason City office had its number of claims representatives reduced from two to one. State Farm Fire provided Cottrell with a staffing model that was to be utilized in conducting the reorganization. In fulfilling the staffing model, Cottrell first placed all claims superintendents in the region and then placed all claims representatives in the region. Cottrell had ten secretarial positions to place in the region. Seven of the ten secretarial positions were placed in State Farm Fire's Johnston, Iowa, office. This left only three secretarial positions for State Farm Fire's remaining Iowa offices. It was ultimately determined that a secretarial position would not be placed in the Mason City office. A secretarial position in Bettendorf, Iowa, occupied by Donna Lanier, and a secretarial position in Cedar Rapids, occupied by Deena Underwood, were eliminated. Both Lanier and Underwood were offered transfers to Lincoln, Nebraska, but both declined the offers and were terminated.

As part of the reorganization, each State Farm Fire employee was required to complete an employee selection guide. The employee selection guide required an employee to indicate the employee's willingness to accept a transfer to another State Farm Fire office. Loeckle completed an employee selection guide and indicated that she was not willing to relocate from State Farm Fire's Mason City claims office. Nonetheless, after it was determined that Loeckle's secretarial position in Mason City was going to be eliminated in the reorganization, Loeckle was offered a transfer to State Farm Fire's regional of-

fice in Lincoln, Nebraska. The position offered to Loeckle was a lateral transfer and she would have maintained the same job classification, salary and employment benefits. Loeckle declined the position.

### B. Contested Facts

1. Whether Loeckle lost a draft in late 1995 or early 1996.

2. Whether the decision to eliminate Loeckle's secretarial position in Mason City was made by Cottrell or by Boyd Marquardt, Human Resources Director in Lincoln, Nebraska and Barbara Tolliver–Haskins, Vice–President of Operations.

3. Whether State Farm Fire employees attempted to dissuade Loeckle from accepting State Farm Fire's offer of a lateral transfer to the regional office in Lincoln, Nebraska.

4. Whether Cottrell conferred with other managerial personnel in implementing the reorganization.

### IV. LEGAL ANALYSIS

#### (including some further findings of fact)

#### A. Employment Relationship Requirement

Loeckle's claims for relief allege unlawful discriminatory employment practices under the ADEA, the ADA, and the ICRA. The ADEA prohibits discrimination by an employer against an employee on the basis of the employee's age, 29 U.S.C. § 630(b); *see Humenansky v. Regents of Univ. Of Minn.*, 152 F.3d 822, 824 (8th Cir.1998), *petition for cert. filed*, 67 U.S.L.W. 3504 (U.S. Feb. 1, 1999) (No. 98–1235), while the ADA prohibits an employer from discriminating against an employee because of a perceived disability.[2] 42 U.S.C. § 12111(5)(A); *see Webb v. Mercy Hosp.*,

102 F.3d 958, 959 (8th Cir.1996). Thus, in order to prevail on her claims, Loeckle must demonstrate that each defendant was her "employer." *See Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 (5th Cir.1993) (affirming district court's order dismissing plaintiffs' Title VII and ADEA claims for lack of jurisdiction where plaintiff failed to establish that defendants were her employers).

■ While defendant State Farm Fire admits that Loeckle was an employee of that company, defendant State Farm Auto asserts that it was not Loeckle's employer. Loeckle concedes that she cannot prevail against defendant State Farm Auto on her discrimination claims unless she can demonstrate the existence of an employer-employee relationship with it. Loeckle, however, contends that the extent and nature of the control asserted by State Farm Auto over the work and workplace establishes an employer-employee relationship between her and defendant State Farm Auto for the purposes of the ADA, the ADEA, and the ICRA. As several federal courts of appeals have recognized, whether a person is an employee under a federal civil rights statute is a question of federal law. *See Montgomery v. Brookshire*, 34 F.3d 291, 295 (5th Cir.1994); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir.1991); *Clark v. Tarrant County, Tex.*, 798 F.2d 736, 742 (5th Cir.1986); *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159 (5th Cir.1986); *Armbruster v. Quinn*, 711 F.2d 1332, 1339 (6th Cir.1983); *Cobb v. Sun Papers*, 673 F.2d 337, 339 (11th Cir.), *cert. denied*, 459 U.S. 874, 103 S.Ct. 163, 74 L.Ed.2d 135 (1982); *Calderon v. Martin County*, 639 F.2d 271, 272–73 (5th Cir. 1981).

#### B. Determination of Employee Status

Under the ADEA, an "employer" is defined as a "person engaged in an industry

---

**2.** The Iowa Civil Rights Act of 1965, like comparable federal law, prohibits the discharge of an employee because of that employee's perceived disability. *See* Iowa Code 216.6; *Vincent v. Four M Paper Corp.*, 589 N.W.2d 55, 63 (Iowa 1999) (holding that

"[t]he plaintiff must establish that the defendant failed to make the employment decision based on an individualized assessment of the plaintiff's condition, and instead based its decision on myths, fears or stereotypes.").

affecting commerce who has 20 or more employees ... and any agent of such person." 29 U.S.C. § 630(b). Similarly, under the ADA, an employer means "a person engaged in an industry affecting commerce who has 15 or more employees ... and any agent of such person." 42 U.S.C. § 12111(5)(A).[3]

Courts have adopted three tests for determining whether an individual is an employee: (1) the common-law agency test, first set forth in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989) and more recently reaffirmed by the Supreme Court in *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992); (2) the economic realities test, *see Armbruster*, 711 F.2d at 1340; and (3) the hybrid test, a combination of the common law agency and economic realities tests, *see Wilde v. County of Kandiyohi*, 15 F.3d 103, 105 (8th Cir.1994); *Cobb*, 673 F.2d 337, 340–41.

3. There is no dispute in this case that both State Farm Auto and State Farm Fire employ the requisite number of employees to constitute employers for the purposes of the ADA, the ADEA and the ICRA. Instead, the issue of contention between the parties is solely whether Loeckle was an employee of State Farm Auto.

4. The Supreme Court developed the economic realities test in a Fair Labor Standards Act ("FLSA") case. *See Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961). The Court relied on the FLSA's provision that the term "employ" includes "to suffer or permit to work," 29 U.S.C. § 203(g), a definition not found in Title VII. In *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992), the United States Supreme Court unanimously ruled that traditional agency law criteria should be used to determine whether the plaintiff was an employee under the Employee Retirement Income Security Act of 1974 ("ERISA"). The Court rejected its reasoning in previous cases decided under the National Labor Relations Act, *NLRB v. Hearst*, 322 U.S. 111, 124, 64 S.Ct. 851, 88 L.Ed. 1170 (1944), and the Social Security Act, *United States v. Silk*, 331 U.S. 704, 713, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947), which,

The Eighth Circuit Court of Appeals has expressly repudiated application of the economic realities test in Title VII cases.[4] *See Wilde*, 15 F.3d at 106. Instead, the court has applied the hybrid test while noting that it sees "no significant difference between the hybrid test and the common-law test articulated by the Supreme Court in *Darden.* " *Id.* As the Eighth Circuit Court of Appeals explained:

> Under both tests, all aspects of the working relationship are considered. The Restatement's list of common-law factors used in both tests is nonexhaustive, and consideration of the additional economic factors does not broaden the traditional common-law test. Indeed, by adding employee benefit and tax treatment factors to the Restatement factors in its explanation of the common-law test, the Supreme Court recognized the common-law test encompasses economic factors.

*Id.; see Lambertsen v. Utah Dep't of Corrections*, 79 F.3d 1024, 1028 (10th Cir.1996)

applying the economic realities test, held that the term "employee" was to be construed more broadly than the common law definition. *Darden*, 503 U.S. at 324, 112 S.Ct. 1344. In arriving at this conclusion, the Court took note of the fact that Congress amended the National Labor Relations Act to effectively nullify the *Hearst* decision and require the application of traditional agency principles in determining employees from independent contractors. *Id.* 324–25, 112 S.Ct. 1344. As a result, in 1989, the Supreme Court abandoned its emphasis on construing "employee" in light of the purpose to be attained by the statute in question in favor of a traditional legal definition. *Id.* (citing *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989)). The Court distinguished the economic realities test applied in FLSA cases, *see Goldberg*, 366 U.S. 28, 81 S.Ct. 933, 6 L.Ed.2d 100, because unlike ERISA, FLSA "defines the verb 'employ' expansively to mean 'suffer or permit to work.' " *Darden*, 503 U.S. at 326, 112 S.Ct. 1344. The Court further rejected the use of a test based upon the plaintiff's expectations because such an approach "would It compromise the capacity of companies ... to figure out who their 'employees' are and what ... their pension fund obligations will be." *Id.* at 327, 112 S.Ct. 1344.

(noting "that there 'is little discernible difference between the hybrid [approach] and the common law agency [approach].'") (quoting *Frankel v. Bally, Inc.,* 987 F.2d 86, 90 (2d Cir.1993)); *Frankel,* 987 F.2d at 90 ("We note that in practice there is little discernible difference between the hybrid test and the common law agency test. Both place their greatest emphasis on the hiring party's right to control the manner and means by which the work is accomplished and consider a non-exhaustive list of factors as part of a flexible analysis of the 'totality of the circumstances.'"); *see also Folkerson v. Circus Circus Enters.,* No. 93–17158, 1995 WL 608432 at *3 (9th Cir.1995) (in an unpublished decision, the Ninth Circuit Court of Appeals stated: "We conclude that the common-law agency approach discussed in *Darden* is in practice largely indistinguishable from the hybrid approach we had already established."). Therefore, the court will apply the hybrid test here to determine if Loeckle was an employee of State Farm Auto for the purposes of the ADA, the ADEA, and the ICRA.[5]

### C. Application Of The Hybrid Test

The Eighth Circuit Court of Appeals has instructed that "[u]nder the hybrid test, the term 'employee' is construed in light of general common-law concepts, taking into account the economic realities of the situation." *Wilde,* 15 F.3d at 105 (citing *Cobb,* 673 F.2d at 340–41). Under the hybrid test, numerous factors regarding the employment relationship are considered, and no one factor is decisive. *Id.; Devine v. Stone, Leyton & Gershman, P.C.,* 100 F.3d 78, 81 (8th Cir.1996), *cert. denied,* 520 U.S. 1211, 117 S.Ct. 1694, 137 L.Ed.2d 821 (1997); *Oestman v. National Farmers Union Ins. Co.,* 958 F.2d 303, 305 (10th Cir.

1992). As the Court of Appeals for the District of Columbia explained in *Spirides:*

This [hybrid] test calls for application of general principles of the law of agency to undisputed or established facts. Consideration of all of the circumstances surrounding the work relationship is essential, and no one factor is determinative. Nevertheless, the extent of the employer's right to control the "means and manner" of the worker's performance is the most important factor to review here, as it is at common law. . . . If an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist.

*Spirides,* 613 F.2d at 831–32. The *Spirides* court then went on to list additional factors which are relevant to the consideration of this issue:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the job; (6) the manner in which the work relationship is terminated; i.e., by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

---

**5.** This court could not locate any Iowa cases that address the appropriate test to be applied under Iowa law in determining whether an individual is an employee. However, because the Iowa courts normally look to comparable federal law when interpreting their civil

rights statutes, *see, e.g., Dutcher v. Randall Foods,* 546 N.W.2d 889, 897 (Iowa 1996), the court will apply the hybrid test in determining whether Loeckle was an employee of defendant State Farm Auto for the purposes of the ICRA.

*Id.* at 832; *accord Oestman,* 958 F.2d at 305 (quoting with approval the *Spirides* factors); *Fields v. Hallsville Indep. Sch. Dist.,* 906 F.2d 1017, 1019 n. 4 (5th Cir. 1990) (citing *Spirides* factors with approval), *cert. denied,* 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Diggs v. Harris Hosp.–Methodist, Inc.,* 847 F.2d 270, 272–73 (5th Cir.) (citing *Spirides* factors), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988); *Mares v. Marsh,* 777 F.2d 1066, 1067–68 (5th Cir.1985) (accepting the *Spirides* factors, but noting that the right to control is an especially crucial factor); *Wilde v. County of Kandiyohi,* 811 F.Supp. 446, 451–52 (D.Minn. 1993) (quoting *Spirides,* 613 F.2d at 832), *aff'd,* 15 F.3d 103 (8th Cir.1994).[6] With these principles in mind, the court turns to the case at hand to apply the hybrid test, considering as it must, the above factors in order to evaluate State Farm Auto's relationship with Loeckle.

### 1. State Farm Auto's right to control and supervise Loeckle

■ As the court indicated above, the employer's right to control the "means and manner" of the worker's performance is the most important factor in the analysis under either the hybrid test or the common law test. *Alexander,* 101 F.3d at 492; *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 438 (7th Cir.1996); *Lambertsen,* 79 F.3d at 1027; *Frankel,* 987 F.2d at 90; *Oestman,* 958 F.2d at 305; *Fields,* 906 F.2d at 1019; *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *Baker v. McNeil Is-*

*land Corrections Ctr.,* 859 F.2d 124, 128 (9th Cir.1988); *Broussard,* 789 F.2d at 1160; *Zippo Mfg. Co.,* 713 F.2d at 37; *Cobb,* 673 F.2d at 339; *Spirides,* 613 F.2d at 831. The logical underpinning of this factor being that "[i]f an employer has the right to control and direct the work of an individual, not only as to the result to be achieved, but also as to the details by which that result is achieved, an employer/employee relationship is likely to exist." *Wheeler,* 825 F.2d at 259.

■ Here, Loeckle was directly employed by State Farm Fire. Although Loeckle was asked to assist with State Farm Auto's secretarial work, State Farm Fire supervised and reviewed her performance. Loeckle was unaware of any performance reviews of her work being conducted by State Farm Auto and the record before the court is devoid of any such evidence. Loeckle's two immediate supervisors were two State Farm Fire claims representatives in Mason City. Thus, the court concludes that this factor weighs against a finding of an employment relationship between State Farm Auto and Loeckle.

### 2. Other hybrid test factors

In considering the other hybrid test factors, the court first notes that State Farm Auto did not compensate Loeckle for her secretarial work in Mason City. Loeckle's wages were paid exclusively by State Farm Fire. Additionally, State Farm Auto did not provide her with benefits. Loeckle was not given leave by State Farm Auto. As to whether Loeckle's work was an inte-

---

**6.** The similarity between the hybrid test and the common law test is demonstrated by similarity in the factors to be considered under each test. The Supreme Court, in *Reid* and *Darden* approved consideration of the following factors in an analysis of whether an individual is an employee under the general common law of agency: 1) the hiring party's right to control the manner and means by which the product is accomplished; 2) the skill required by the hired party; 3) the source of instrumentalities and tools; 4) the location of the work; 5) the duration of the relationship between the parties; 6) the hiring party's right to assign additional projects; 7) the hired party's discretion over when and how long to work; 8) the method of payment; 9) the hired party's role in hiring and paying assistants; 10) whether the work is part of the hiring party's regular business; 11) whether the hiring party is in business; 12) the hired party's employee benefits; and 13) tax treatment of the hired party's compensation. *Darden,* 503 U.S. at 323–24, 112 S.Ct. 1344; *Reid,* 490 U.S. at 751–52, 109 S.Ct. 2166.

gral part of State Farm Auto's regular business in Mason City, after State Farm Auto hired Bacon in 1991, Loeckle's position was more centered on conducting secretarial duties for State Farm Fire.[7] Thus, Loeckle's position, after 1991, cannot be deemed to be an integral part of State Farm Auto's Mason City business. The court cannot determine from the summary judgment record whether State Farm Auto or State Farm Fire furnished Loeckle with her place of work and the equipment used in her position at the Mason City office. It was apparently a shared operation between the two companies. Indeed, the only other factor that weighs ever so slightly toward a finding of an employment relationship between State Farm Auto and Loeckle is the fact that Loeckle did have daily contact with State Farm Auto employees.

While the hybrid test for determining employee status cannot be applied with mathematical precision, after analyzing the applicable hybrid test factors, the court concludes that State Farm Auto did not control Loeckle, and that Loeckle can not be deemed an employee of defendant State Farm Auto for the purposes of the ADA, the ADEA or the ICRA. Therefore, the court grants defendant State Farm Auto's Motion For Summary Judgment. The court turns next to the issues raised in State Farm Fire's Motion For Summary Judgment.

### D. Loeckle's Disability Claims Against State Farm Fire[8]

The court has previously engaged in extensive discussions of the origins of the ADA. See Valentine v. American Home Shield Corp., 939 F.Supp. 1376,

1388 (N.D.Iowa 1996); Muller v. Hotsy Corp., 917 F.Supp. 1389, 1402–05 (N.D.Iowa 1996); Heather K. v. City of Mallard, Iowa, 887 F.Supp. 1249, 1263–66 (N.D.Iowa 1995); Hutchinson v. United Parcel Serv., Inc., 883 F.Supp. 379, 387–90 (N.D.Iowa 1995); Fink v. Kitzman, 881 F.Supp. 1347, 1368–71 (N.D.Iowa 1995). Thus, the court will not repeat that discussion here. Rather, the court will proceed directly to the nature of the prohibition on disability discrimination under the ADA.

As the United States Supreme Court observed just last month, "[t]he ADA prohibits discrimination by covered entities, including private employers, against qualified individuals with a disability." Sutton v. United Air Lines, Inc., —— U.S. ——, 119 S.Ct. 2139, 2143, —— L.Ed.2d —— (1999). Under the ADA, "disability" is broadly defined to include not only "a physical or mental impairment that substantially limits one or more of the major life activities of [the disabled] individual," but also "ha[ving] a record of such an impairment," or the state of "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A),(B),(C); see Sutton, 119 S.Ct. 2139, 2149; Fjellestad v. Pizza Hut of Am., 182 F.3d 609, 613 (8th Cir.1999); Mercy Hosp., 102 F.3d at 960; Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1318 (8th Cir.1996); Wooten v. Farmland Foods, 58 F.3d 382, 385 (8th Cir.1995); accord Runnebaum v. NationsBank of Md., N.A., 95 F.3d 1285, 1289 (4th Cir.1996); Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 725 (5th Cir. 1995); Vande Zande v. State of Wis. Dep't of Admin., 44 F.3d 538, 541 (7th Cir.1995); Bolton v. Scrivner, Inc., 36 F.3d 939, 942 (10th Cir.1994), cert. denied, 513 U.S. 1152,

---

7. When Bacon required surgery in 1995, Loeckle assumed all of Bacon's secretarial duties for State Farm Auto in the Mason City office. Similarly, when Loeckle was on vacation, Bacon would assume Loeckle's secretarial duties in her absence.

8. Iowa courts look to the ADA, its regulatory interpretations, and its case law in resolving disability claims under the ICRA. See Fuller v.

Iowa Dept. of Human Servs., 576 N.W.2d 324, 329 (Iowa 1998); Berg v. Norand Corp., 169 F.3d 1140, 1144 n. 3 (8th Cir.1999); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir.1997). Therefore, while the court's analysis will refer only to the ADA, it also applies to Loeckle's disability discrimination claim under the ICRA.

115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995); *Chandler v. City of Dallas*, 2 F.3d 1385, 1391 (5th Cir.1993), *cert. denied*, 511 U.S. 1011, 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994). To establish a claim under the ADA, Loeckle must show:

> (1) that she is disabled within the meaning of the Act; (2) that she is qualified to perform the essential functions of the job either with or without accommodation; and (3) that she has suffered adverse employment action because of the disability.

*Fjellestad*, 182 F.3d at 613 (citing *Benson v. Northwest Airlines, Inc.*, 62 F.3d 1108, 1112 (8th Cir.1995)); *Gutridge v. Clure*, 153 F.3d 898, 901 (8th Cir.1998) (same).

Here, Loeckle does not assert that she suffers from any disability. Instead, she contends that she falls within the last definition of a disabled person under the ADA, because State Farm Fire "regarded [her] as having such an impairment." 42 U.S.C. § 12102(2)(C).

### 1. *"Regarded as having" a disability*

The United States Supreme Court recently observed:

> Under subsection (C), individuals who are "regarded as" having a disability are disabled within the meaning of the ADA. *See* § 12102(2)(C). Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A). There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either

> that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of ... individual ability." *See* 42 U.S.C. § 12101(7).

*Sutton*, 119 S.Ct. 2139, 2149; *see Murphy v. United Parcel Service Inc.*, —— U.S. ——, 119 S.Ct. 2133, 2137, —— L.Ed.2d —— (1999) (noting that "a person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities.").

Two seminal decisions of the Eighth Circuit Court of Appeals regarding the perceived disability prong of ADA protection are informative on the question of whether summary judgment can be granted in this case. In *Wooten v. Farmland Foods*, 58 F.3d 382 (8th Cir.1995), the Eighth Circuit Court of Appeals wrote,

> Read in conjunction with subsection (A), subsection (C) prescribes that a person is considered disabled for purposes of the ADA if that person is "regarded as having" an impairment that "substantially limits" a "major life activit[y]." 42 U.S.C. § 12102(2)(C). The limiting adjectives "substantially" and "major" indicate that the perceived "impairment must be a significant one." *Byrne v. Board of Educ., Sch. of West Allis–West Milwaukee*, 979 F.2d 560, 564 (7th Cir. 1992). A person is "regarded as having" an impairment that substantially limits the person's major life activities when other people treat that person as having a substantially limiting impairment. *See* 29 C.F.R. § 1630.2(*l* )(3). The focus is on the impairment's effect upon the attitudes of others. *Byrne*, 979 F.2d at 566. This provision is intended to combat the effects of "archaic attitudes," erroneous perceptions, and myths that work to the disadvantage of persons with or regarded as having disabilities. *See School Bd.*

*of Nassau County v. Arline,* 480 U.S. 273, 279 & 285, 107 S.Ct. 1123, 1126 & 1129, 94 L.Ed.2d 307 (1987).

*Wooten,* 58 F.3d at 385. More recently, the Eighth Circuit Court of Appeals has referred to the applicable EEOC regulations for guidance on what constitutes being "regarded as having" an impairment:

[The EEOC regulations] provide as follows:

(*l*) *Is regarded as having such an impairment* means:

(1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;

(2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or

(3) Has none of the impairments defined .... [above] but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(*l*)(1–3).

*Aucutt,* 85 F.3d at 1319–20; *accord Mercy Hosp.,* 102 F.3d at 960 (" A person is 'regarded as having' an impairment that substantially limits major life activities when others treat that person as having a substantially limiting impairment."); *Runnebaum,* 95 F.3d at 1289 ("The EEOC defines the term 'regarded as having [a disability]' to include persons who have 'a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of *others* toward such impairment,' " quoting 29 C.F.R. § 1630.2(a)(2), with emphasis added by that court). Thus, to prevail on her perceived disability claim, Loeckle must first show, or show that there is a genuine issue of material fact, that State Farm Fire perceived her medical conditions as "substantially limit[ing] one or more of [her] major life activities." *See* 42 U.S.C. § 12102(2)(C); *Aucutt,* 85 F.3d at 1319–20; *Wooten,* 58 F.3d at 385.

### 2. Substantial limitations on major life activities

In seeking further definition of the term "substantially limits" under the ADA, the Eighth Circuit Court of Appeals looked to the regulations implementing the ADA:

[T]he EEOC regulations state that the following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment, (ii) its duration or expected duration, and (iii) its actual or expected long-term impact. 29 C.F.R. § 1630.2(j)(2).

*Aucutt,* 85 F.3d at 1319; *accord Fjellestad,* 182 F.3d at 613 ("The following factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact.") (citing 29 C.F.R. § 1630.2(j)(2)(i)–(iii); *Cook v. State of R.I. Dep't of Mental Health, Retardation, & Hosps.,* 10 F.3d 17, 25 n. 10 (1st Cir.1993) (finding that EEOC regulations "indicate that the question of whether an impairment is substantially limiting turns on '(1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the [actual or expected] permanent or long-term impact ... of, or resulting from, the impairment,' " quoting 29 C.F.R. § 1630, App. at 403 (1992)). ADA regulations, as well as ADA interpretive guidance, make clear that temporary, minor injuries do not "substantially limit" a person's major life activities. 29 C.F.R. § 1630.2(j), 29 C.F.R. Pt. 1630 App. § 1630.2(j).

This court has previously applied this "substantially limits" a "major life activity" requirement in several cases under the ADA. *See, e.g., Muller,* 917 F.Supp. at 1411–12 (considering whether a person with spinal injury that was temporary nonetheless perceived by his employer as having a disability that substantially limit-

ed his major life activity of working); *Hutchinson*, 883 F.Supp. at 395–96 (considering whether a person with shoulder and back injuries was substantially limited in any major life activity); *Fink*, 881 F.Supp. at 1376–77 (considering whether a person with carpal tunnel syndrome was substantially limited in a major life activity).

The ADA does not define "major life activities," so the Eighth Circuit Court of Appeals has been guided by the definition provided in 29 C.F.R. § 1630.2 of the EEOC regulations on implementation of Title I of the ADA. *Aucutt*, 85 F.3d at 1319.

As defined in 29 C.F.R. § 1630.2(i), the phrase "major life activities" means "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."29 C.F.R. § 1630.2(i). The regulations further provide that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i). Rather, a person claiming a disability must show that the impairment "significantly restrict[s] [his or her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Id.; see also Bolton v. Scrivner, Inc.*, 36 F.3d 939, 942–44 (10th Cir.1994) (*Bolton*) (work-related injury preventing employee from performing his job as order selector in grocery warehouse was not substantial limitation in major life activity of working, as required for unlawful discharge claim under ADA, absent evidence showing restriction in ability to perform class of jobs or broad range of jobs in various classes), *cert. denied*, 513 U.S. 1152, 115 S.Ct. 1104, 130 L.Ed.2d 1071 (1995).

*Aucutt*, 85 F.3d at 1319.

Similarly, in *Webb*, the Eighth Circuit Court of Appeals, having noted that "work" is a major life activity under the EEOC regulations, 29 C.F.R. § 1630.2(i), concluded that "[a] person is substantially limited in the major life activity of working if she is 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.'" *Webb*, 94 F.3d at 487 (quoting 29 C.F.R. § 1630.2(j)(3)(i)). Although the court in *Wooten* also found that "working" was a major life activity, the court then found that "working" does not mean working at a particular job of that person's choice. *Wooten*, 58 F.3d at 386. Furthermore, the court held that a person perceived as having "an impairment that disqualifies a person from only a narrow range of jobs is not considered [by the employer as having] a substantially limiting one." *Id.* (quoting *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995)); *see also Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1249 n. 3 (6th Cir.1985) (the court concluded that the employer had not regarded the employee as handicapped because his eyesight prevented his driving, because an impairment "that affects only a narrow range of jobs can be regarded either as not reaching a major life activity or as not substantially limiting one."). Quite recently, the United States Supreme Court came to the exact same conclusion in *Sutton*, where the Court noted that: "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 119 S.Ct. at 2151. Thus, an impairment or condition that affects "only a narrow range of jobs" is not considered as reaching a major life activity nor as substantially limiting one. *See Sutton*, 119 S.Ct. at 2151; *Wooten*, 58 F.3d at 386; *Chandler*, 2 F.3d at 1392 (quoting *Jasany*, 755 F.2d at 1249 n. 3).

However, "[u]nder this broad definition of substantial limitation, an ADA plaintiff need not demonstrate that her impairment restricts her ability to perform all jobs. Rather, as the EEOC's interpretive guide to the Act illustrates, an individual is disabled when her impairment merely prevents performance of a certain class of jobs." *Webb,* 94 F.3d at 487 (citing 29 C.F.R. § 1630.2(j)(3)(ii)). Furthermore, an employer's belief that an employee is unable to perform one task with an adequate safety margin or that an employee can work in positions other than the one formerly occupied despite his impairment does not establish that the employer regards the employee as having a substantial limitation on the employee's ability to work in general. *Chandler,* 2 F.3d at 1392–93. In addition, "the determination of whether an individual is substantially limited in a major life activity must be made on a case by case basis." *Fjellestad,* 182 F.3d at 613 (citing *Doane v. City of Omaha,* 115 F.3d 624, 627 (8th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998)).

The Eighth Circuit Court of Appeals and this court has found certain alleged disabilities did not meet the requirements of substantially limiting the plaintiff in a major life activity. *See, e.g., Berg v. Norand Corp.,* 169 F.3d 1140, 1145 (8th Cir. 1999) (holding that diabetic employee was not substantially limited in major life activity of working, and, thus she was not disabled for ADA purposes, where although limited to 40– to 50–hour work week, she was never unemployed and she did not show any class of jobs or broad range of jobs from different classes from which she was excluded because of her diabetes); *Gutridge v. Clure,* 153 F.3d 898, 901 (8th Cir.1998) (holding that employee's carpal and cubital tunnel syndromes, which resulted in lifting restrictions rendering him unable to perform his job as a computer service technician, did not substantially limit him in the major life activity of working, so as to render him disabled under ADA, where the employee found a similar job); *Hutchinson,* 883 F.Supp. at 395–96 (back and shoulder injuries were not minor, but were temporary, and any remaining impairment was admittedly only slight, thus plaintiff was not disqualified from a wide range of jobs, and had failed to demonstrate substantial limitations in any other major life activity); *Fink,* 881 F.Supp. at 1376–77 (plaintiff with carpal tunnel syndrome was restricted only in lifting, but was not substantially limited in any other way, and the lifting restriction did not substantially limit any major life activity or even impair plaintiff's job performance); *Schwarz v. Northwest Iowa Community College,* 881 F.Supp. 1323, 1343–45 (N.D.Iowa 1995) (applying Iowa disability discrimination law, the court held that alleged "night blindness," although it impaired the major life activity of seeing, did not limit the plaintiff in any significant way from obtaining satisfactory employment or disqualify her from a wide range of jobs); *and compare Fjellestad,* 182 F.3d at 613 (reversing district court's granting of summary judgment for employer, court of appeals held that employee's permanent thirty percent impairment of her upper right extremity and restrictions that limit her to working 35–40 hours per week with no more than three consecutive days of work created a triable issue as to whether employee's impairments significantly restricted the condition, manner, or duration in which she can work as compared to an average person in the general population); *Muller,* 917 F.Supp. at 1412 (in a perceived disability case, the plaintiff generated a genuine issue of material fact precluding summary judgment as to whether his employer perceived him to be substantially limited in the major life activity of working because of his back injuries).

### 3. *Analysis of Loeckle's ADA Claim*

Loeckle contends that, although she was not disabled, she was perceived as disabled by State Farm Fire. The Eighth Circuit Court of Appeals has granted summary judgment in perceived disability cases un-

der the ADA when the plaintiff failed to generate evidence creating a genuine issue of material fact as to the employer's perception of the necessary impairment. *Aucutt*, 85 F.3d at 1319.

In *Aucutt*, the plaintiff employee asserted that summary judgment had been granted improperly on his perceived disability claim in the face of evidence that the employer was aware of his medical problems and his inability to perform certain aspects of his job, as well as his request for a specific accommodation. *Aucutt*, 85 F.3d at 1319. However, the Eighth Circuit Court of Appeals found that "[t]he mere fact that [the employer] had such knowledge, however, does not show that [the employer] regarded [the plaintiff] as having a disabling impairment." *Id.* The court then found that the plaintiff "ha[d] not brought forth any [other] evidence suggesting that [the employer] perceived or treated [the employee] as having a substantially limiting impairment" and "[i]n the absence of such evidence, the fact that [the employer] was aware of his medical problems is insufficient to establish that [the employer] 'regarded' him as disabled under 42 U.S.C. § 12102(2)." *Id.* at 1320. The court therefore held that the plaintiff had failed to make a *prima facie* case of disability discrimination and summary judgment in the employer's favor had properly been granted by the district court. *Id.* Similarly, here, State Farm Fire's awareness of Loeckle's medical condition alone is insufficient to generate a genuine issue of material fact as to a perceived disability. The record indicates that State Farm Fire employees thought Loeckle was experiencing problems with her memory and mental alertness. Loeckle informed Buzynski that the only medical problems she was experiencing were thyroid problems and menopause, and that her personal physician was adequately attending to her medical needs. As the Eighth Circuit Court of Appeals pointed out in *Mercy Hospital:* "An employer's knowledge that an employee exhibits

symptoms which may be associated with an impairment does not necessarily show the employer regarded the employee as disabled." *Mercy Hosp.*, 102 F.3d at 960.

The inadequate evidence generated in this case is to be contrasted with the evidence found by the Ninth Circuit Court of Appeals to be sufficient to generate a genuine issue of material fact as to perceived disability in *Holihan v. Lucky Stores, Inc.*, 87 F.3d 362 (9th Cir.1996). In *Holihan*, the court found the following:

> Lucky called Holihan into two separate meetings to discuss his aberrational behavior. At one of these meetings, Lucky District Manager Church asked Holihan if he was having any "problems;" at the other, Church strongly encouraged Holihan to seek counseling through Lucky's [Employee Assistance Program]. Lucky also received several doctors' reports diagnosing Holihan with depression, anxiety and stress, including the reports of Drs. Strickler and Cramer. From these facts, a reasonable jury could infer that Lucky regarded Holihan as suffering from a disabling mental condition that substantially limited his ability to work.
>
> On the other hand, the record also contains facts which might lead a trier of fact to conclude that Lucky did not regard Holihan as disabled.
>
> Our obligation in reviewing a grant of summary judgment is to view the facts in the light most favorable to the nonmoving party. So viewed, the facts here create a genuine issue of material fact as to whether Lucky regarded Holihan as disabled within the meaning of section 12102(2)(C) of the ADA.

*Holihan*, 87 F.3d at 366–67 (footnote omitted). Thus, in *Holihan*, more than simple awareness of a medical condition that might affect a particular job was presented by the evidence. Instead, the employer was aware of a condition that would or could substantially impair the plaintiff's ability to work at any job.

The evidence here should also be contrasted with this court's own prior decision in *Muller*, in which this court held that a plaintiff under the ADA had generated a genuine issue of material fact as to perceived disability:

> [A co-worker] claimed that [the plant manager] refused to let [the plaintiff] complete any of the physical work and reprimanded [the employee] for attempting to do so. Thus, the record reveals [the manager] perceived [the employee] as being precluded from performing light work, which, in turn, arguably precluded [the employee] from performing a variety of jobs, as opposed to a "narrow range" of jobs. *Cf. Wooten*, 58 F.3d at 386. Because the court finds there is at least a material question of fact as to whether [the manager] regarded [the employee] as "substantially limited" in his ability to work, the court finds the facts in *Wooten* are distinguishable from those in this case.

*Muller*, 917 F.Supp. at 1412 (citations to the record omitted). Thus, in *Muller*, there was evidence suggesting that the employer was acting upon the employer's own perceptions of the employee's limitations as barring the employee from a variety of jobs. *Id.* Here, in stark contrast, State Farm Fire took no action to limit, reduce or modify Loeckle's secretarial duties. Rather, even after Loeckle had the discussion with Buzynski about her medical problems, Loeckle's duties remained unaltered. More importantly, Loeckle was offered a lateral transfer to Lincoln, Nebraska, under which she would have maintained the same job classification. The offer of a job transfer to Loeckle demonstrates that State Farm Fire regarded Loeckle as able to perform her secretarial duties.

Loeckle's assertion that there is a genuine issue of material fact as to whether she was refused a transfer to Lincoln cannot be entertained in the face of her deposition testimony that she had been offered such a transfer and that she had refused that offer.[9] This court has with some frequen-

---

9. Loeckle testified in pertinent part in her deposition as follows:

Q. At some point you in fact have the opportunity to take a job with State Farm Fire in Lincoln, Nebraska?
A. Yes.
Q. And the reason you turned that down was what?
A. I had assumed that I had the job in Mason City, I didn't need to be mobile.
Q. At the time you were offered the job in Lincoln didn't you know that you no longer had the position in Mason City?
A. That day, I found out May 14.
Q. And my question to you is after you found out there was not a position in Mason City didn't you still have the opportunity to go to Lincoln, Nebraska? For State Farm Fire?
A. They said I could go to Lincoln, Nebraska.
Q. And did you in fact turn that offer down?
A. Yes.
Q. And the reason you turned the offer was what?
A. I was told that I was—my job was going to be secure in Mason City. I don't know what you're getting at. I just assumed that—they said I had a job there in Mason City, sir.
Q. But once you knew you didn't didn't you —
A. Once I knew I didn't consider it, you know, after I found out, I was considering about moving to Lincoln, and then I was— J.P. said, you know, "You have your family here, your husband is here, you know, you don't want to go there, you know it's time that"—that's what he told me. He says, "Please think it over."
Q. Well, did J.P. then make the decision for you not to go to Lincoln or did you make the decision?
A. I made the decision.
. . .
Q. So when this goes to trial and you're called on to testify in front of the jury are you going to be telling the jury that you would have gone to Lincoln but for this discouragement that you received from J.P.?
A. I would not have went to Lincoln. I said I was not—I made the decision not to be mobile.

Loeckle Dep. at pp. 86–88, 133. Loeckle's deposition testimony is the antithesis of the following statement found in her affidavit:

43. On May 22, 1996, I e-mailed a memo to Mr. Cottrell, stating that I wanted to take a positive and proactive approach to my

cy considered the question of whether eleventh-hour affidavits that contradict deposition testimony can generate a genuine issue of material fact precluding summary judgment. *See Longstreth v. Copple*, C97–4100–MWB, at *20–22 (N.D.Iowa May 6, 1999) (holding that the court could not conclude that the plaintiff's deposition testimony was so contradictory of the statements contained in plaintiff's affidavit as to foreclose the affidavit's use for summary judgment purposes); *Waitek v. Dalkon Shield Claimants Trust*, 908 F.Supp. 672, 684–686 (N.D.Iowa 1995) (holding that the affidavit of an expert proffered in opposition to summary judgment motion was assertedly in conflict with the expert's prior deposition testimony, but the court found that the affidavit could generate genuine issues of material fact, because the expert explained the basis for his apparently changed opinion); *Kunzman v. Enron Corp.*, 902 F.Supp. 882, 896–98 (N.D.Iowa 1995) (holding that affidavits of two former co-workers would be considered and allowed to create a genuine or substantial factual issue, even though the plaintiff stated in his deposition that he was unaware of the co-workers' knowledge, where the co-workers' affidavits specifically referred to a statement made in their presence and which the defendants had not challenged in any manner); *Rowson v. Kawasaki Heavy Indus., Inc.*, 866 F.Supp. 1221, 1229–31 (N.D.Iowa 1994) (holding that a belated affidavit could be considered where the affiant's memory was recently refreshed by photographs that he had not been shown during the deposition); *see also Laird v. Stilwill*, 969 F.Supp. 1167, 1173 (N.D.Iowa 1997) (noting the general rule that an affidavit that is in direct contradiction of or inherently conflicts with the affiant's prior deposition testimony fails to raise an issue of material fact). The general rule cited in these decisions,

based on the holding of the Eighth Circuit Court of Appeals in *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983), is that an affidavit that is in direct contradiction of or inherently conflicts with prior deposition testimony by the affiant does not raise an issue of material fact, although an exception to the rule may be shown where the affiant explains apparent inconsistencies or demonstrates a plausible reason for a change.

■ Here, Loeckle's counsel offered an explanation for Loeckle's change in testimony at oral argument—that she was confused at the time of her deposition and thus honestly answered questions put to her in deposition. The court does not find Loeckle's explanation to be plausible. First, Loeckle herself does not declare that she was confused in her affidavit. Indeed, her affidavit makes no mention of the prior inconsistent statements contained in her deposition. Moreover, her deposition testimony does not denote confusion on her part. This is particularly evident in the final question and answer on the subject of her possible transfer to Lincoln:

Q. So when this goes to trial and you're called on to testify in front of the jury are you going to be telling the jury that you would have gone to Lincoln but for this discouragement that you received from J.P.?

A. I would not have went to Lincoln. I said I was not—I made the decision not to be mobile.

Loeckle Dep. at pp. 133. As a result, the court concludes that Loeckle's affidavit fails to fall within the exception stated in *Camfield* that an affidavit contradicting the prior deposition testimony of the affiant but containing an adequate explanation for the disparity may create a genuine issue of fact. Rather, the court concludes that Loeckle's deposition testimony is so

---

employment, and take whatever steps were necessary to preserve my job with State Farm. I told both Mr. Cottrell and Mr. Buzynski that I was willing to relocate to Lincoln, but both discouraged me from do-

ing so, based upon such things as separation from my family, and undesirable working hours in Lincoln. I was told it was time to retire.

Loeckle Aff. at ¶ 43.

contradictory of the statements contained in her affidavit as to foreclose her affidavit's use for summary judgment purposes. Thus, the court concludes that Loeckle has failed to generate a genuine issue of material fact that State Farm Fire regarded her as disabled, that is, substantially limited in the major life activity of working. *See Murphy,* 119 S.Ct. at 2137.

Therefore, the court concludes that State Farm Fire is entitled to summary judgment on Loeckle's disability discrimination claims. The court turns next to an analysis of Loeckle's age discrimination claims under the ADEA.

### E. *Loeckle's ADEA Claim*

The ADEA prohibits employer discrimination against any individual forty years of age and older with respect to terms, conditions or privileges of employment because of the individual's age. 29 U.S.C. §§ 623(a), 631. An ADEA claim can arise either as a pretext claim, as a mixed motives claim, or as a reduction in force ("RIF") claim. *Spencer v. Stuart Hall Co.,* 173 F.3d 1124, 1127 (8th Cir. 1999). Each of these types of ADEA claim has slightly different elements. *Id.* (citing *Bevan v. Honeywell, Inc.,* 118 F.3d 603, 609 n. 1 (8th Cir.1997).) Here, the court finds that the RIF matrix is appropriate for reviewing Loeckle's claims regarding State Farm Fire's reorganization. In analyzing a complaint of age discrimination in a RIF context, it is important to be cognizant that the ADEA "was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Allen v. Diebold, Inc.,* 33 F.3d 674, 677 (6th Cir.1994).

### 1. *The analytical framework for claims of age discrimination*

The allocation of the burden of proof in ADEA cases has been held to be the same as in cases arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1988). *Hutson v. McDonnell Douglas Corp.,* 63 F.3d 771, 778 (8th Cir.1995); *Bashara v. Black Hills Corp.,* 26 F.3d 820, 823 (8th Cir.1994); *Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 448 (8th Cir.1993); *Beshears v. Asbill,* 930 F.2d 1348, 1353 nn. 6 & 7 (8th Cir.1991). It is axiomatic that employment discrimination need not be proved by direct evidence, and indeed, that doing so is often impossible, because, as the Supreme Court has said, "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *Gaworski v. ITT Commercial Fin. Corp.,* 17 F.3d 1104, 1108 (8th Cir.) (citing *United States Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 716, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983)), *cert. denied,* 513 U.S. 946, 115 S.Ct. 355, 130 L.Ed.2d 310 (1994); *Hutson,* 63 F.3d at 776. Thus, in employment discrimination cases based on circumstantial evidence, courts apply the analytical framework of shifting burdens developed in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and refined in *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and most recently in *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). *Tuttle v. Missouri Dep't of Agric.,* 172 F.3d 1025, 1029 (8th Cir.1999); *Gaworski,* 17 F.3d at 1108.

Under *McDonnell Douglas* and its progeny, the employment discrimination plaintiff has the initial burden of establishing a *prima facie* case of discrimination by producing evidence that would entitle the plaintiff to prevail unless contradicted and overcome by evidence produced by the defendant. *Tuttle,* 172 F.3d at 1029; *White v. McDonnell Douglas Corp.,* 985 F.2d 434, 435 (8th Cir.1993). "Once established, the prima facie case entitles the plaintiff to a rebuttable presumption that intentional discrimination played a role in the adverse employment action." *Hutson,*

63 F.3d at 776; *accord Tuttle*, 172 F.3d at 1029; *Krenik v. County of Le Sueur*, 47 F.3d 953, 958 (8th Cir.1995); *Kobrin v. University of Minn.*, 34 F.3d 698, 702 (8th Cir.1994).

If a *prima facie* case is established, the burden then shifts to the employer to rebut the presumption by producing evidence that the employer made the questioned employment decision for a legitimate, non-discriminatory reason. *Tuttle*, 172 F.3d at 1029; *White*, 985 F.2d at 435. The employer's explanation of its actions must be "clear and reasonably specific," *Burdine*, 450 U.S. at 258, 101 S.Ct. 1089, but the employer's burden of production has nonetheless been held to be "exceedingly light." *Batey v. Stone*, 24 F.3d 1330, 1334 (11th Cir.1994) (citing *Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir.1994)). If the employer meets this burden of production, the legal presumption that would justify a judgment as a matter of law based on the plaintiff's *prima facie* case "simply drops out of the picture," and the plaintiff bears the burden of persuading the finder of fact that the proffered reasons are pretextual and that the employment decision was the result of discriminatory intent. *St. Mary's*, 509 U.S. at 510, 113 S.Ct. 2742.

The Supreme Court has made clear that the ultimate inquiry is whether the employer intentionally discriminated against the plaintiff. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983); *Tuttle*, 172 F.3d at 1029; *United States v. Johnson*, 28 F.3d 1487, 1494 (8th Cir.1994), *cert. denied*, 513 U.S. 1098, 115 S.Ct. 768, 130 L.Ed.2d 664 (1995). However, if the defendant's proffered reasons are rejected, the trier of fact may infer the ultimate fact of intentional discrimination. *St. Mary's*, 509 U.S. at 510, 113 S.Ct. 2742 ("The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the ele-

ments of the prima facie case, suffice to show intentional discrimination."); *Harvey v. Anheuser–Busch, Inc.*, 38 F.3d 968, 971 (8th Cir.1994) (quoting *St. Mary's*, 509 U.S. at 510, 113 S.Ct. 2742).

■ The importance of the *prima facie* showing is that it creates the inference that the employer terminated the plaintiff for an impermissible reason. *Hardin*, 45 F.3d at 264. However, as was pointed out above, the *prima facie* case criteria differ for each type of employment decision. *Spencer*, 173 F.3d at 1127; *Davenport*, 30 F.3d at 944. Thus, in a case alleging age discrimination, the usual elements of the *prima facie* case are: (1) that the plaintiff was a member of a protected group on the basis of his or her age; (2) that the plaintiff was performing his or her job at a level that met the employer's legitimate expectations; (3) that plaintiff was discharged; and (4) that the employer replaced or attempted to replace the plaintiff with a younger person. *See Montgomery v. John Deere & Co.*, 169 F.3d 556, 559 (8th Cir. 1999); *Vaughn v. Roadway Express, Inc.*, 164 F.3d 1087, 1089 (8th Cir.1998); *Ziegler v. Beverly Enters.–Minn., Inc.*, 133 F.3d 671, 675 (8th Cir.1998); *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995); *Rinehart v. City of Independence, Mo.*, 35 F.3d 1263, 1265–66 (8th Cir.1994) *Radabaugh*, 997 F.2d at 447; *Beshears*, 930 F.2d at 1353; *see also O'Connor v. Consolidated Coin Caterers, Inc.*, 517 U.S. 308, 310, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (in an ADEA case, in order to establish a *prima facie* case it is not necessary that the plaintiff be replaced with a person from outside the protected class, only that the plaintiff be replaced by a younger person).

■ However, as this case involves a discharge in the context of a reorganization, a further modification of the *prima facie* case is necessary. In the context of a reduction in force, the fourth element of the *McDonnell Douglas prima facie* case cannot be shown because the position is not filled by another or left open, but

eliminated or combined with another position. *Hardin*, 45 F.3d at 264; *Hillebrand*, 827 F.2d at 364. Thus, " 'the fact that the plaintiff's duties were assumed by a younger person is not enough in itself to establish a prima facie case.' " *Fast v. Southern Union Co.*, 149 F.3d 885, 890 (8th Cir.1998) (quoting *Bialas v. Greyhound Lines, Inc.*, 59 F.3d 759, 763 (8th Cir.1995)). Accordingly, the Eighth Circuit Court of Appeals held that the plaintiff in a reduction in force case to establish a *prima facie* case of age discrimination must show (1) that she was in the protected age group; (2) that she satisfied the applicable job qualifications; (3) that she was discharged; and (4) produce some additional showing that age was a factor in her termination. *See Spencer*, 173 F.3d at 1128; *Tuttle*, 172 F.3d at 1029; *Reynolds v. Land O'Lakes, Inc.*, 112 F.3d 358, 361 (8th Cir.1997); *Cramer v. McDonnell Douglas Corp.*, 120 F.3d 874, 876 (8th Cir.1997); *Herrero v. St. Louis Univ. Hosp.*, 109 F.3d 481, 483–84 (8th Cir.1997); *Hutson*, 63 F.3d at 776; *see also Hardin*, 45 F.3d at 264; *Rinehart*, 35 F.3d at 1267–68; *Thomure v. Phillips Furniture Co.*, 30 F.3d 1020, 1024 (8th Cir.1994), *cert. denied*, 513 U.S. 1191, 115 S.Ct. 1255, 131 L.Ed.2d 135 (1995); *Bashara v. Black Hills Corp.*, 26 F.3d 820, 823 (8th Cir.1994).

### 2. Analysis of prima facie case

■ Here, as in most RIF cases, the summary judgment inquiry turns on whether Loeckle can satisfy the fourth element. *See Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir.1999). Here, the court concludes that Loeckle has failed to generate a genuine issue of material fact on her *prima facie* case of age discrimination in this reduction-in-force case. State Farm Fire readily concedes that two elements of the *prima facie* case are not in dispute here. Loeckle was within the protected age group at the time of her termination, and Loeckle's performance met State Farm Fire's expectations. Thus, the sticking points on Loeckle's *prima facie* case are whether Loeckle was

terminated, and whether or not she has shown "additional evidence" that age was a factor in her discharge under State Farm Fire's reorganization. *See Walton*, 167 F.3d at 427. Assuming, *arguendo*, that the elimination of her secretarial position in Mason City was a sufficiently adverse employment action to meet the third prong of the *prima facie* case, the court concludes that Loeckle has not shown "additional evidence" that age was a factor in her discharge. Indeed, while her position in Mason City was eliminated in the reorganization, State Farm Fire offered her a transfer to State Farm Fire's regional office in Lincoln, Nebraska. The position offered to Loeckle was a lateral transfer and she would have maintained the same job classification, salary and employment benefits. Loeckle declined the position. Loeckle points to the fact that she had more experience and was better qualified than Bacon. However, as discussed above, Loeckle was an employee of State Farm Fire while Bacon was an employee of State Farm Auto and thus not subject to State Farm Fire's reorganization. Therefore, the fact that Bacon was able to retain her position in the Mason City Office does not constitute "additional evidence" that age was a factor in her discharge under State Farm Fire's reorganization. Finally, Loeckle contends that Cottrell did not adhere to State Farm's staffing model in making the decision as to what secretarial positions to eliminate. Here, Loeckle points to Cottrell's decision to leave State Farm Fire secretaries in its Dubuque and Burlington, Iowa offices while eliminating her position in Mason City. Cottrell, however, explained in his deposition that those two positions were retained because of informal agreements State Farm Fire had with State Farm Auto to maintain secretarial help in those two offices. No similar situation or informal agreement existed in the case of the Mason City office. Moreover, a secretarial position in Bettendorf, Iowa, occupied by Donna Lanier, was eliminated. Lanier, like Loeckle, was offered a

transfer to Lincoln, Nebraska, but declined it and was terminated. Therefore, the court finds that Loeckle has failed to establish her *prima facie* case of age discrimination under the ADEA and defendant State Farm Fire's Motion For Summary Judgment is granted.

### V. CONCLUSION

Initially, the court concludes, after analyzing the applicable factors, that State Farm Auto did not control Loeckle, and that Loeckle can not be deemed an employee of defendant State Farm Auto for the purposes of the ADA, the ADEA or the ICRA. The court further concludes that Loeckle has failed to make a *prima facie* case of disability discrimination and summary judgment in State Farm Fire's favor is also appropriate as to Loeckle's claims under the ADA and the ICRA. The mere fact that State Farm employees were aware of certain medical problems being experienced by Loeckle is insufficient, standing alone, to show that State Farm Fire regarded her as disabled. Finally, the court concludes that Loeckle has failed to generate a genuine issue of material fact on her *prima facie* case of age discrimination. Specifically, Loeckle is unable to show "additional evidence" that age was a factor in her discharge under State Farm Fire's reorganization. Thus, the court further concludes that summary judgment in State Farm Fire's favor is also appropriate as to Loeckle's claim under the ADEA. Therefore, the court **grants defendant State Farm Fire and State Farm Auto's respective motions for summary judgment.**

**IT IS SO ORDERED.**